### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

In re:

Gregory B. Myers

Debtor.

Case No.  15-26033-MCR

Chapter 7

---

**DEBTOR'S MOTION TO VACATE JULY 3, 2025 ORDER OVERRULING CLAIM OBJECTIONS AS MOOT PURSUANT TO FED. R. CIV. P. 60(b)(1), 60(b)(2), 60(b)(3), 60(b)(4), 60(b)(5), AND 60(b)(6), MADE APPLICABLE BY FED. R. BANKR. P. 9024, PRESERVING RELIEF UNDER FED. R. CIV. P. 60(d)(1) AND 60(d)(3), AND REQUEST FOR INDICATIVE RULING UNDER FED. R. BANKR. P. 8008**

Debtor and party in interest Gregory B. Myers moves under Federal Rule of Civil Procedure 60(b)(1), 60(b)(2), 60(b)(3), 60(b)(4), 60(b)(5), and 60(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 9024, to vacate the Court's July 3, 2025 Order Overruling Claim Objections as Moot entered at Docket No. 1072 (the "Claim-Objection Order"). Myers also preserves relief under Rule 60(d)(1) and Rule 60(d)(3). If the Court concludes that a pending appeal limits its authority to grant immediate relief, Myers requests an indicative ruling under Federal Rule of Bankruptcy Procedure 8008.

The Claim-Objection Order overruled Myers's objections to Proof of Claim Nos. 21-1, 22-1, and 23-1 as moot because the King Parties agreed to withdraw those claims as part of the settlement approved in Adversary Proceeding No. 24-00007. But the same order states that the claims were "deemed withdrawn effective when the Order granting the Settlement Motion becomes final and non-appealable." Thus, when the Court overruled the Claim Objections as moot, the claims had not yet been finally withdrawn, the Settlement Order was not final and non-appealable, and Myers's objections remained unresolved.

The Claim-Objection Order should be vacated. The King claims could not be treated as

1

both operative for purposes of standing, party-in-interest status, settlement leverage, and Rule 9019 approval, while simultaneously treated as moot for purposes of Myers's objections. After Myers objected, the King Parties could not withdraw the claims as of right under Bankruptcy Rule 3006. Withdrawal required court order after notice and hearing and on such terms as the Court deemed proper. The Court therefore had to adjudicate the objections, or at minimum preserve them pending final, non-appealable withdrawal of the claims.

## I. BACKGROUND

On May 6, 2025, Myers filed objections to Claim No. 22-1 filed by Cristina King, Claim No. 23-1 filed by the Cristina and Brian King Children's Trust, and Claim No. 21-1 filed by Brian King. Those objections were docketed at Docket Nos. 1051, 1052, and 1053.

On June 30, 2025 and July 1, 2025, the Court held a combined evidentiary hearing to consider Myers's Claim Objections and the Trustee's Application to Compromise Controversy filed in Adversary Proceeding No. 24-00007. The Settlement Motion sought approval of a compromise between the Trustee and the King Parties concerning the King Parties' adversary complaint against the Trustee.

As part of the proposed settlement, the King Parties agreed to withdraw Proof of Claim Nos. 21-1, 22-1, and 23-1. On July 3, 2025, the Court entered the Claim-Objection Order. The Order states that the Claim Objections were overruled as moot because the King claims were to be withdrawn in connection with the settlement. The Order also states that the claims were deemed withdrawn only when the Settlement Order became final and non-appealable.

The Settlement Order has not supplied a final, non-appealable predicate eliminating the Claim Objections. Myers appealed the Settlement Order, sought rehearing in the District Court, and is filing or has filed a separate Rule 60(b) motion in Adversary Proceeding No. 24-00007

2

seeking relief from the Settlement Order. The validity of the Settlement Order, the December 11, 2023 settlement-procedure order, the King adversary, the King claims, and the settlement structure remain contested.

The Claim-Objection Order therefore rests on a non-final contingency that did not exist when the objections were overruled as moot.

## II. GROUNDS FOR RELIEF UNDER RULE 60(b)

Rule 60(b), made applicable by Bankruptcy Rule 9024, authorizes relief from a judgment or order for mistake, newly discovered evidence, fraud, a void judgment, a judgment whose predicate has been satisfied, released, discharged, reversed, vacated, or whose prospective application is no longer equitable, and any other reason justifying relief. Myers invokes every applicable category of Rule 60(b), including Rules 60(b)(1), (2), (3), (4), (5), and (6).

### A. Rule 60(b)(1): Mistake, Inadvertence, Surprise, or Excusable Neglect.

Relief is warranted under Rule 60(b)(1) because the Claim-Objection Order rests on mistake, legal misapprehension, and procedural error.

The Court overruled Myers's Claim Objections as moot even though the claims had not yet been withdrawn. The Claim-Objection Order states that the King claims were deemed withdrawn only when the Settlement Order became final and non-appealable. Because that condition had not occurred, the claims remained pending when the objections were overruled.

The Court also erred by treating the settlement's future claim-withdrawal term as present mootness. A claim objection is not moot merely because a claimant has promised to withdraw a claim in the future upon finality of another order. Until the withdrawal is effective and approved in compliance with Rule 3006, the claim remains pending and the objection remains live.

The Court further erred by permitting the King claims to perform two inconsistent

3

functions. For purposes of the Settlement Order, the King claims supported the King Parties' status, participation, leverage, and settlement structure. For purposes of Myers's objections, however, those same claims were treated as moot because they would later be withdrawn. The same claims could not be live for settlement purposes but moot for objection purposes.

### B. Rule 60(b)(2): Newly Discovered Evidence.

Relief is warranted under Rule 60(b)(2) based on newly discovered or newly confirmed evidence bearing on the King claims, the King Parties' standing, the conflict-tainted litigation structure, the alleged Serv Trust redemption, and the integrity of the settlement and claim-withdrawal process.

Myers has obtained or confirmed evidence showing that the King/Goldsboro/Serv Trust redemption narrative was shaped through counsel-directed alteration or sanitization of documents, including communications concerning the Serv Trust K-1, the 6789 Goldsboro LLC tax return, and the date and rationale for the alleged redemption. The evidence also includes conflict evidence concerning VerStandig, Offit Kurman, Pelletier, Lynch, King, Goldsboro, Serv Trust, Myers, and the consolidated Maryland litigation.

This evidence is material to the Claim-Objection Order because the King claims were not ordinary claims against the estate. They were filed as part of the December 11, 2023 settlement-procedure structure and were then used in connection with the King adversary, the Settlement Order, and the purported withdrawal of the claims. The same conflict, redemption, payment, and documentary-record issues that undermine the Settlement Order also undermine the premise that the King claims could be used and then withdrawn to moot Myers's objections without adjudication.

At minimum, this evidence requires a full evidentiary hearing, targeted discovery, and a

4

verified accounting before the Claim-Objection Order can stand.

### C. Rule 60(b)(3): Fraud, Misrepresentation, or Misconduct.

Relief is warranted under Rule 60(b)(3) because the Claim-Objection Order was procured through misrepresentation, misconduct, and material mischaracterization of the operative record, including the status of the King claims, the effect of the Settlement Order, the effect of the Florida claim-objection order, the King Parties' standing, the alleged redemption, and the conflict record.

The King claims were treated as sufficient for purposes of settlement and party-in-interest status, but then treated as moot for purposes of Myers's objections. That was misleading. If the claims mattered enough to support the settlement structure, they mattered enough to require adjudication once Myers objected.

The King Parties also could not use a promised future withdrawal to avoid adjudication of objections after those objections had already been filed. Under Rule 3006, after an objection is filed, a creditor may withdraw a proof of claim only by court order after notice and hearing and on such terms as the Court deems proper. The claim-withdrawal issue therefore required adjudication, not mootness.

The Claim-Objection Order also rests on the broader settlement structure challenged in the adversary Rule 60(b) motion. If the Settlement Order was procured through conflict, misconduct, misrepresentation, undisclosed side arrangements, or counsel-directed alteration or sanitization of the alleged redemption narrative, then the claim-withdrawal term flowing from that Settlement Order cannot serve as a valid basis to overrule Myers's Claim Objections as moot.

### D. Rule 60(b)(4): The Claim-Objection Order Is Void.

5

Relief is warranted under Rule 60(b)(4) because the Claim-Objection Order is void to the extent it deprived Myers of adjudication of live claim objections based on a settlement order and claim-withdrawal term that had not become final, non-appealable, or effective.

The Bankruptcy Court had jurisdiction to adjudicate claims and claim objections, but it lacked authority to overrule live objections as moot based on a future contingent withdrawal while simultaneously treating the claims as operative for settlement purposes. Due process required adjudication of the objections or, at minimum, preservation of the objections until the claims were actually withdrawn in compliance with Rule 3006 and the Settlement Order became final and non-appealable.

The Claim-Objection Order also is void to the extent it depends on a void or defective Settlement Order. The Settlement Order is being challenged separately under Rule 60(b) and Rule 60(d) in Adversary Proceeding No. 24-00007. If the Settlement Order is void, defective, or not final and non-appealable, then the claim-withdrawal predicate for the Claim-Objection Order fails.

### E. Rule 60(b)(5): Predicate Failure, Reversal, Vacatur, Discharge, Release, Satisfaction, or Prospective Inequity.

Relief is warranted under Rule 60(b)(5) because the Claim-Objection Order rests on predicates that have failed, remain contested, or make prospective application inequitable.

The Claim-Objection Order depends on the Settlement Order becoming final and non-appealable and on the King claims being deemed withdrawn upon that event. But the Settlement Order has been appealed, rehearing was sought, and Myers is separately seeking Rule 60(b) relief from the Settlement Order. The Settlement Order therefore cannot serve as a stable final predicate for overruling the Claim Objections as moot.

Relief is also warranted because the King claims are barred, precluded, or otherwise

6

defective in light of the Florida bankruptcy order sustaining Myers's objection to King's claim. The King Parties could not revive barred claims in Myers's Maryland Chapter 7 case through late proofs of claim, the December 11, 2023 settlement-procedure order, or the King adversary proceeding.

Prospective application of the Claim-Objection Order is inequitable because it allows the King claims to be used as settlement leverage while depriving Myers of adjudication of his objections. It also allows a contingent claim withdrawal to function as a merits avoidance device, contrary to Rule 3006 and due process.

**F. Rule 60(b)(6): Any Other Reason Justifying Relief.**

Relief is warranted under Rule 60(b)(6).

Extraordinary circumstances justify vacatur. The Claim-Objection Order is intertwined with a contested Settlement Order that allegedly affects non-debtor trust property without a Trustee-filed adversary, necessary parties, due process, or a final Section 541 adjudication. The order also depends on late King proofs of claim, a King-filed adversary, a nonfinal state-court partial order, unresolved standing issues, conflict evidence, fraud/misconduct evidence, and the Florida claim-objection order.

Allowing the Claim-Objection Order to stand would permit a settlement structure to avoid claim adjudication by labeling objections moot before the claims were actually withdrawn. It would also allow the King claims to support settlement approval while preventing Myers from obtaining a ruling on their validity, timeliness, preclusion, standing, and legal sufficiency.

Those circumstances justify relief under Rule 60(b)(6).

**G. Rule 60(d)(1) and Rule 60(d)(3): Independent Action and Fraud on the Court.**

Myers also preserves relief under Rule 60(d)(1) and Rule 60(d)(3).

7

Rule 60(d)(1) preserves the Court's power to entertain an independent action to relieve a party from a judgment, order, or proceeding. To the extent any aspect of relief from the Claim-Objection Order cannot be granted directly under Rule 60(b), Myers preserves the right to seek relief through an independent action.

Rule 60(d)(3) preserves the Court's power to set aside an order for fraud on the court. The conflict evidence, the counsel-directed alteration or sanitization of the alleged Serv Trust redemption narrative, the use of the King claims as part of a settlement structure, and the use of a future contingent claim withdrawal to avoid adjudication of Myers's objections preserve a fraud-on-the-court issue.

## III. RULE 3006 REQUIRED ADJUDICATION OR COURT-APPROVED WITHDRAWAL AFTER OBJECTION

Bankruptcy Rule 3006 controls withdrawal of proofs of claim. After a party in interest has objected to a proof of claim, the claimant may withdraw the claim only by court order after notice and hearing and on such terms as the Court deems proper.

Myers objected to Claim Nos. 21-1, 22-1, and 23-1 before the claims were withdrawn. Therefore, the King Parties could not withdraw the claims as of right. The withdrawal required a court order after notice and hearing, and the Court was required to consider appropriate terms. The Court could not simply overrule Myers's objections as moot based on a settlement term providing for future withdrawal.

The Claim-Objection Order confirms the problem. It states that the King claims were deemed withdrawn only when the Settlement Order became final and non-appealable. That condition had not occurred when the Claim-Objection Order was entered. Therefore, the claims remained pending, and Myers's objections remained live.

If the Court intended the July 3, 2025 order itself to approve withdrawal of the King

claims under Rule 3006, then the Court was required to address the objections and impose appropriate terms. If the Court did not intend the order to approve withdrawal until the Settlement Order became final and non-appealable, then the objections were not moot and should not have been overruled.

Either way, the Claim-Objection Order cannot stand.

## IV. THE CLAIM-OBJECTION ORDER IS CIRCULARLY DEPENDENT ON THE SETTLEMENT ORDER

The Claim-Objection Order depends on the Settlement Order. The Settlement Order depends, at least in part, on the King claims, the King adversary, and the King Parties' asserted status as parties in interest or potential creditors.

This circular structure is defective. The Settlement Order cannot validate the claims while the Claim-Objection Order avoids adjudication of the objections on the ground that the Settlement Order will later withdraw the claims. Nor can the Claim-Objection Order make the Settlement Order cleaner by eliminating objections to the very claims that helped create the settlement structure.

The King claims had to be adjudicated before they could be used as part of the settlement structure, or the objections had to be preserved until final, non-appealable withdrawal of the claims. The Court did neither.

The Claim-Objection Order should therefore be vacated or, at minimum, modified to preserve Myers's objections pending final resolution of the Settlement Order and the adversary Rule 60(b) motion.

## V. THE FLORIDA CLAIM-OBJECTION ORDER BARRED OR PRECLUDED THE KING CLAIMS

Myers objected to the King claims, among other reasons, because the Florida bankruptcy

9

court had already sustained Myers's objection to King's claim. The King Parties could not revive barred or disallowed claims in Myers's Maryland Chapter 7 case by relying on the December 11, 2023 settlement-procedure order, late proofs of claim, or a King-filed adversary.

The Claim-Objection Order avoided this issue by treating the objections as moot. But the Florida order was a merits and preclusion issue that had to be adjudicated before the King claims could be treated as valid, operative, or useful for settlement purposes.

The Court's failure to adjudicate this issue supports relief under Rule 60(b)(1), Rule 60(b)(3), Rule 60(b)(5), and Rule 60(b)(6).

## VI. THE KING CLAIMS DID NOT CREATE STANDING TO FILE THE ADVERSARY OR SUPPORT THE SETTLEMENT STRUCTURE

The King claims also did not cure the King Parties' lack of standing to file the adversary proceeding in Adv. Proc. No. 24-00007. A proof of claim may assert a right to payment from the estate. It does not authorize a claimant to file an adversary seeking declaratory relief concerning Serv Trust property, 6789 Goldsboro LLC, or alleged redemption rights under the Goldsboro Operating Agreement.

The Court could not use the King proofs of claim to support standing, party-in-interest status, or settlement approval and then avoid adjudicating the objections to those claims by declaring them moot. If the claims were relevant to standing and settlement approval, Myers's objections were not moot.

## VII. ACCOUNTING, TARGETED DISCOVERY, PAYMENT TRACING, AND CLAIM-WITHDRAWAL DISCLOSURES

Myers requests targeted discovery and a verified accounting concerning the King claims, the alleged withdrawal of those claims, the consideration for withdrawal, any settlement-related payments, any side agreements, and any payment or reimbursement arrangements connected to the Claim-Objection Order and Settlement Order.

10

The discovery should include:

1. all agreements, drafts, emails, and communications concerning withdrawal of Claim Nos. 21-1, 22-1, and 23-1;

2. all communications concerning whether the claims were withdrawn, when they were withdrawn, whether withdrawal was conditioned on the Settlement Order becoming final and non-appealable, and whether any party has treated the claims as withdrawn despite pending appeals and Rule 60 proceedings;

3. all consideration given or promised for withdrawal of the King claims;

4. all payments, reimbursements, indemnity agreements, side agreements, fee-defense agreements, settlement-defense agreements, claim-withdrawal agreements, dismissal agreements, or other arrangements involving the King Parties, the Trustee, Trustee's counsel, Mastro, VerStandig, Goldsboro, Offit Kurman, Pelletier, Lynch, or any related person or entity;

5. all communications concerning the $150,000 settlement payment and any fee reimbursement for appeals or reconsideration-related proceedings;

6. all communications concerning the effect of the Florida claim-objection order;

7. all communications concerning the King Parties' standing, claim status, party-in-interest status, and use of the claims in connection with the Settlement Order;

8. all proposed-order communications and drafts concerning the Claim-Objection Order, the Settlement Order, the claim-withdrawal term, and the "final and non-appealable" condition;

9. all trust-account records, escrow records, wire records, canceled checks, invoices, fee statements, reimbursement requests, and payment records reflecting any consideration

11

connected to withdrawal of the King claims or defense of the Settlement Order; and

10. any common-interest agreement, joint-defense agreement, cooperation agreement, indemnity agreement, fee-sharing agreement, reimbursement agreement, or informal arrangement concerning the King claims, the Settlement Order, the adversary proceeding, or defense of the settlement.

To the extent any party or professional withholds responsive documents based on privilege, work product, common-interest, joint-defense, or confidentiality, Myers requests a privilege log identifying the date, author, recipient, subject matter, asserted privilege, and basis for withholding.

## VIII. PRESERVATION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

Myers requests that the Court direct all parties and counsel to preserve all documents, electronically stored information, communications, billing records, trust-account records, wire records, bank records, invoices, settlement communications, engagement letters, conflict waivers, fee agreements, reimbursement agreements, indemnity agreements, accountant communications, tax-return communications, K-1 communications, appraisal communications, metadata, and payment records relating to:

1. Claim Nos. 21-1, 22-1, and 23-1;

2. the Claim Objections;

3. the Claim-Objection Order;

4. the Settlement Order;

5. the December 11, 2023 settlement-procedure order;

6. the King adversary proceeding;

7. the alleged Serv Trust redemption;

12

8. the 6789 Goldsboro LLC tax return;

9. the Serv Trust K-1;

10. the "pick a date" communication;

11. the Florida claim-objection order;

12. the $150,000 settlement payment;

13. fee reimbursement or indemnity arrangements;

14. claim-withdrawal consideration;

15. dismissal consideration;

16. communications among or between King, VerStandig, Goldsboro, Offit Kurman, Pelletier, Lynch, Mastro, Schlossberg, Trustee's counsel, accountants, appraisers, and any related person or entity; and

17. any side agreements, oral agreements, written agreements, informal understandings, or undisclosed arrangements relating to claim withdrawal, settlement, redemption, dismissal, fee reimbursement, appeal reimbursement, reconsideration expenses, or defense of the Settlement Order.

## IX. EX PARTE, OFF-DOCKET, CHAMBERS, CLERK, AND PROPOSED-ORDER COMMUNICATIONS

Myers requests disclosure and production of any ex parte communications, off-docket communications, proposed-order communications, chambers communications, clerk communications, email communications, letters, telephone communications, or other communications between the Court or Court staff and any party, counsel, professional, or representative concerning the Claim-Objection Order, the Settlement Order, the proposed form of order, claim withdrawal, settlement implementation, payment timing, fee reimbursement, appeal or reconsideration reimbursement, adversary dismissal, docketing of dismissal papers,

13

proposed findings, proposed language, or any other matter relating to the Claim-Objection Order or Settlement Order.

Myers does not know whether any such communications occurred, but because the Claim-Objection Order and Settlement Order were prepared after an oral ruling, included material settlement and claim-withdrawal terms, and were followed by implementation, dismissal, and reimbursement issues, any off-docket communications concerning those matters are material to the Rule 60(b), Rule 60(d), accounting, discovery, and evidentiary-hearing requests.

## X. FULL EVIDENTIARY HEARING, TARGETED DISCOVERY, AND ACCOUNTING ARE REQUIRED

Myers requests a full evidentiary hearing, targeted discovery, and a verified accounting concerning the factual issues raised by this motion.

The issues raised here are not limited to legal disagreement with the Claim-Objection Order. They include the status of the King claims, the alleged withdrawal of those claims, whether the withdrawal condition has occurred, whether the claims were used to support settlement approval, whether the King Parties had standing, whether the Florida order barred the claims, whether there was consideration or side consideration for withdrawal, and whether undisclosed payment, reimbursement, indemnity, or conflict issues affected the claim-withdrawal process.

A full evidentiary hearing should include testimony from, at minimum, Schlossberg, Mastro, VerStandig, Brian King, a Goldsboro representative, and any person with knowledge of the claim withdrawals, settlement payment, fee reimbursements, indemnity agreements, side agreements, or payment flows.

Targeted discovery should include bank records, trust-account records, wire records,

14

settlement communications, fee agreements, indemnity agreements, reimbursement agreements, attorney invoices, common-interest agreements, joint-defense agreements, order-drafting communications, and communications concerning the Claim-Objection Order, Settlement Order, claim withdrawals, and defense of the Settlement Order.

The evidentiary record is necessary to determine the status and effect of the King claims, the validity of the claim withdrawals, the effect of Rule 3006, the effect of the Florida order, the integrity of the settlement process, and whether the facts support relief under Rule 60(b), Rule 60(d), Bankruptcy Rule 9024, Bankruptcy Rule 8008, Rule 3006, Rule 9019, due process, disgorgement, surcharge, sanctions, contempt, or claims implicating the Trustee's bond.

## XI. SEGREGATION OF FUNDS, IMPLEMENTATION, AND NO MOOTNESS

Implementation or partial implementation of the Settlement Order does not moot Rule 60 relief from the Claim-Objection Order. If the King claims have been treated as withdrawn, if funds have been paid, distributed, reimbursed, transferred, applied to fees, or commingled, the Court retains authority to order accounting, segregation, disgorgement, surcharge, turnover, restoration, clawback, or other relief necessary to remedy consequences of a void or otherwise defective order.

Pending adjudication of this motion, no party should rely on the Claim-Objection Order as an adjudication that the King claims were valid, invalid, withdrawn, allowed, disallowed, moot, or immune from objection.

Myers's request for an accounting, discovery, preservation, segregation of funds, or evidentiary hearing does not ratify the Claim-Objection Order, concede that the King claims were valid, concede that the King claims were withdrawn, concede that the Settlement Order is valid, concede that the estate owned any Serv Trust interest, or waive any voidness, due-process,

15

standing, jurisdictional, claim-objection, conflict, fraud, or bond-related argument.

## XII. RELATED ADVERSARY RULE 60(b) MOTION

Myers is filing, or has filed, a separate Rule 60(b) motion in Adversary Proceeding No. 24-00007 directed to the July 3, 2025 Settlement Order. That adversary motion seeks relief from the settlement order that served as the predicate for the Claim-Objection Order.

The two motions are related but distinct. This motion challenges the main-case Claim-Objection Order. The adversary motion challenges the Settlement Order. Neither order cures the defects in the other. The Settlement Order cannot moot the Claim Objections unless the claims were validly withdrawn, and the Claim-Objection Order cannot validate the Settlement Order by avoiding adjudication of the objections to the King claims.

## XIII. NOTICE TO THE UNITED STATES TRUSTEE

Myers is serving this motion on the United States Trustee because the motion raises issues concerning Trustee authority, estate administration, professional compensation, settlement proceeds, reimbursement and indemnity arrangements, claim withdrawal, conflicts, disclosure obligations, preservation of estate funds, and potential bond-related matters.

Service on the United States Trustee is not a substitute for the relief requested from this Court, but it is appropriate given the fiduciary, estate-administration, professional-compensation, disclosure, payment-flow, and bond issues raised by the Claim-Objection Order, Settlement Order, and related implementation.

## XIV. STATUS CONFERENCE

Myers requests that, after responses are filed, the Court set a status conference to establish a schedule for targeted discovery, verified accounting, preservation issues, supplemental briefing, and an evidentiary hearing.

16

## XV. INDICATIVE RULING UNDER BANKRUPTCY RULE 8008

If the Court concludes that any pending appeal limits its authority to grant immediate relief, Myers requests an indicative ruling under Bankruptcy Rule 8008(a)(3). The Court should state that it would grant this Rule 60(b) motion, or that the motion raises substantial issues, under Rule 60(b)(1), (2), (3), (4), (5), and/or (6).

An indicative ruling is particularly appropriate because related appeals and Rule 60 motions concern the same Settlement Order, the same King claims, the same claim-withdrawal structure, the same adversary proceeding, and the same threshold defects concerning standing, claim status, Rule 9019, Rule 3006, due process, estate-property adjudication, and Trustee authority.

## XVI. RESERVATION OF RIGHTS AND NO WAIVER

Myers expressly reserves all rights, claims, objections, defenses, appeals, sanctions requests, disqualification requests, discovery requests, accounting requests, disgorgement requests, surcharge requests, contempt requests, clawback requests, restoration requests, turnover requests, claim-objection arguments, Rule 60(b) arguments, Rule 60(d) arguments, Rule 9024 arguments, Rule 8008 arguments, Rule 3006 arguments, Rule 9019 arguments, Rule 7001 arguments, due-process arguments, jurisdictional arguments, constitutional arguments, Trustee-bond arguments, and independent-action arguments in the main bankruptcy case, the adversary proceeding, the pending District Court appeals, and any related proceedings.

Nothing in this motion should be construed as a waiver, narrowing, abandonment, election of remedies, consent to jurisdiction, consent to final adjudication, consent to the Claim-Objection Order, consent to the Settlement Order, consent to the December 11, 2023 settlement-procedure order, consent to the King adversary, consent to the withdrawal of King claims,

17

consent to the use of Rule 9019 as a substitute for an adversary proceeding, or consent to any adjudication affecting Myers, Serv Trust, 6789 Goldsboro LLC, the Serv Trust beneficiaries, the current trustee, or other absent or affected parties.

Myers also preserves the right to seek surcharge, disgorgement, sanctions, contempt, disqualification, professional-fee review, claim-objection relief, Rule 60(d) relief, independent-action relief, fraud-on-the-court relief, and relief against the Trustee's bond.

## XVII. RELIEF REQUESTED

**WHEREFORE**, Debtor Gregory B. Myers respectfully requests that the Court enter an order:

1.  granting this motion under Rule 60(b)(1), Rule 60(b)(2), Rule 60(b)(3), Rule 60(b)(4), Rule 60(b)(5), Rule 60(b)(6), Bankruptcy Rule 9024, Rule 60(d)(1), and Rule 60(d)(3);

2.  vacating the July 3, 2025 Order Overruling Claim Objections as Moot entered at Docket No. 1072;

3.  reinstating Myers's objections to Claim Nos. 21-1, 22-1, and 23-1;

4.  holding that the Claim Objections were not moot when the Court entered the Claim-Objection Order because the King claims had not been finally withdrawn and the Settlement Order had not become final and non-appealable;

5.  holding that the King claims could not be withdrawn as of right after Myers objected and that withdrawal required compliance with Bankruptcy Rule 3006;

6.  holding that the Settlement Order does not moot, waive, preclude, or cure Myers's objections to Claim Nos. 21-1, 22-1, and 23-1;

7.  holding that the Claim-Objection Order does not moot, waive, preclude, or cure

18

Myers's Rule 60(b) challenge to the Settlement Order in Adversary Proceeding No. 24-00007;

8. ordering a full evidentiary hearing on the factual issues raised in this motion;

9. ordering the Trustee and the King Parties to file verified disclosures under penalty of perjury identifying all payments, reimbursements, indemnity obligations, side agreements, escrow arrangements, fee-defense agreements, settlement-defense agreements, claim-withdrawal consideration, dismissal consideration, and professional-payment arrangements connected to the King claims, Claim Objections, Claim-Objection Order, Settlement Order, adversary proceeding, alleged Serv Trust redemption, and related appeals or reconsideration proceedings;

10. ordering the Trustee and King Parties to file a verified accounting of all settlement-related consideration, claim-withdrawal consideration, fee reimbursements, appeal/reconsideration reimbursement payments, indemnity arrangements, side agreements, and payments connected to the King claims or their alleged withdrawal;

11. permitting targeted discovery concerning the King claims, claim withdrawals, settlement funds, payment flows, fee reimbursements, indemnity agreements, professional payments, conflicts, the alleged Serv Trust redemption, the "pick a date" communication, the Settlement Order, and the Trustee's authority;

12. permitting discovery under the Federal Rules of Bankruptcy Procedure, including Rules 7026 through 7037, and/or examination and document production under Rule 2004;

13. requiring production of all written settlement agreements, drafts, term sheets, emails, side agreements, indemnity agreements, reimbursement agreements, fee-payment

agreements, dismissal agreements, claim-withdrawal agreements, escrow instructions, wire instructions, and communications concerning implementation or defense of the Claim-Objection Order or Settlement Order;

14. requiring disclosure, preservation, and production of any ex parte, off-docket, chambers, clerk, proposed-order, settlement-implementation, claim-withdrawal, dismissal, fee-reimbursement, appeal/reconsideration reimbursement, or payment-related communications with the Court or Court staff concerning the Claim-Objection Order, Settlement Order, King claims, or claim withdrawals;

15. requiring all parties and professionals to preserve documents, electronically stored information, billing records, bank records, trust-account records, wire records, settlement records, communications, fee agreements, reimbursement agreements, indemnity agreements, tax records, K-1 records, appraisal records, metadata, and documents relating to the King claims, Claim Objections, Claim-Objection Order, Settlement Order, Goldsboro property, Serv Trust, 6789 Goldsboro LLC, alleged redemption, and related payment flows;

16. requiring any party or professional withholding responsive documents based on privilege, work product, common-interest, joint-defense, or confidentiality to provide a privilege log identifying the date, author, recipient, subject matter, asserted privilege, and basis for withholding;

17. authorizing supplemental briefing after completion of targeted discovery, verified accounting, and any evidentiary hearing;

18. setting a status conference after responses are filed to establish a schedule for targeted discovery, verified accounting, preservation issues, supplemental briefing, and an

evidentiary hearing;

19. declaring that, pending adjudication of this motion, no party may rely on the Claim-Objection Order as an adjudication that Claim Nos. 21-1, 22-1, and 23-1 are valid, invalid, withdrawn, allowed, disallowed, moot, or immune from objection;

20. preserving Myers's right to seek clawback, restoration, turnover, disgorgement, surcharge, sanctions, contempt, professional-fee review, disqualification, independent-action relief, fraud-on-the-court relief, and relief against the Trustee's bond based on the evidence developed;

21. alternatively, if the Court concludes that it cannot grant immediate relief because of the appeal posture, entering an indicative ruling under Bankruptcy Rule 8008 stating that the Court would grant the motion or that the motion raises a substantial issue; and

22. granting such other and further relief as is just and proper.

Dated: July 2, 2026

Respectfully submitted,

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 2, 2026, I caused the foregoing DEBTOR'S MOTION TO VACATE JULY 3, 2025 ORDER OVERRULING CLAIM OBJECTIONS AS MOOT PURSUANT TO FED. R. CIV. P. 60(b)(1), 60(b)(2), 60(b)(3), 60(b)(4), 60(b)(5), AND 60(b)(6), MADE APPLICABLE BY FED. R. BANKR. P. 9024, PRESERVING RELIEF UNDER FED. R. CIV. P. 60(d)(1) AND 60(d)(3), AND REQUEST FOR INDICATIVE RULING UNDER FED. R. BANKR. P. 8008 to be filed with the Clerk of the Bankruptcy Court and a true and correct copy of same was served upon all parties registered to receive service by CM/ECF, including the following:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012


_____
Gregory B. Myers, *pro se*

22